Richard E. Slezak  OSB #862906
res@slezaklaw.com
Richard E Slezak *PC*
6446 Fairway Ave SE Suite 120
Salem OR 97306
503 315-2022
503 315-2026 facsimile
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JANE DOE** | Case No. 3:14-cv-1527 |
| Plaintiff, | COMPLAINT |
|  | Personal Injury and |
| v | Civil Rights claims |
|  | (28 USC § 1331 and 28 USC §1343) |
| **CHEMEKETA COMMUNITY COLLEGE; and PATRICK L LANNING,** | DEMAND FOR JURY TRIAL |
| Defendants. | |

## JURISDICTION

1.      Plaintiff's first two claims for relief against Defendant, Chemeketa Community College arise under 42 USC §1983 and 20 USC §1681, respectively.

Page 1- COMPLAINT

**Richard E. Slezak** *PC*
**6446 Fairway Ave SE Suite 120**
**Salem OR 97306**
**503 315-2022**

The court has federal question jurisdiction of the action under 28 USC §1331, and civil rights jurisdiction under 28 USC §1343. This court has supplemental jurisdiction of plaintiff's state claims under 28 USC §1367.

## RELEVANT FACTS

2. At all times material, plaintiff was employed at Chemeketa Community College (hereinafter, "Chemeketa")

3. Defendant, Patrick L Lanning, (hereinafter, Lanning) was employed by Defendant, Chemeketa Community College as Campus President and Chief Academic Officer of Instruction and Student Services.

4. On or about February 5, 2014, plaintiff and Lanning, among others, attended a school-sponsored conference at the Portland Airport Sheraton Hotel, (hereinafter, "the hotel") in Portland, Multnomah County OR.

5. In the evening hours of February 6, 2014, plaintiff and other Chemeketa employees, including Lanning, were socializing and drinking at the hotel bar. At some point, Lanning and plaintiff were seated next to each other. On one or more occasions, Lanning commented that plaintiff was not drinking fast enough and encouraged her to drink more quickly. On two occasions, Lanning ordered plaintiff an additional drink without her permission.

Page 2- COMPLAINT

Richard E. Slezak *PC*
6446 Fairway Ave SE Suite 120
Salem OR 97306
503 315-2022

6.      During the same time and in the same place, Lanning made unwanted and unwelcome physical contact with plaintiff, including rubbing her back and shoulders, massaging her waist and buttocks, and touching her between her legs underneath the table.

7.      After the touching between the legs, plaintiff left the bar visibly upset and crying.  An executive dean of Chemeketa, Manual Guerra, who was also attending the conference, escorted plaintiff to her hotel room.

8.      Another dean, Susan Murray, followed, and met Guerra and plaintiff at her room.

9.      While at plaintiff's room door, the hotel telephone rang several times.  Dean Murray suggested that it was likely Lanning; that plaintiff did not have to answer it; that she should not be afraid; and asked whether plaintiff wanted her (Dean Murray) to stay in plaintiff's room with her for the night, which plaintiff declined.

10.     Thereafter, Lanning entered plaintiff's hotel room.

11.     At all times material, Lanning was in plaintiff's hotel room.  The room was dark, with the curtains drawn, but Plaintiff was aware that Lanning was on top of her in her bed.  Plaintiff sensed Lanning was touching her; that his

hands were on her skin; that he was caressing her neck; that he was touching her sexually; and that he was sexually penetrating her.

12.   At the time Lanning entered plaintiff's hotel room, and thereafter while he was in her hotel room, plaintiff was incapacitated, as defined in ORS 124.100(1)(c) and therefore, vulnerable, as defined in ORS 124.100 (1)(e)(C).

13.   Lanning's conduct was unwelcome, offensive, unprivileged and without plaintiffs consent.

14.   Plaintiff awoke the next morning, completely naked, her clothes from the night before neatly piled on top of her shoes on the floor. Lanning's eyeglasses were on the nightstand next to plaintiff's bed.

15.   The following day, February 7, 2014, plaintiff went to Silverton Hospital Emergency Department where she underwent a forensic "rape kit" examination by a forensic nurse in the Emergency Department, during which plaintiff identified Lanning as her assailant.

16.   The nurse telephoned Port of Portland Police to report a rape and that Patrick Lanning had been identified as the assailant.

17.   At all times material, Lanning was an agent of Chemeketa, acting within the apparent authority of that agency.

Page 4- COMPLAINT

18. At all times material, Lanning acted with the purpose of serving Chemeketa, pursuant to the privileges granted to him by Chemeketa and its Board of Trustees.

19. At all times material, Chemeketa permitted Lanning to sexually abuse plaintiff by acting or failing to act to protect her from Lanning when Chemeketa knew of Lanning's history of sexual misconduct, including his prior sexual harassment of another female employee at Chemeketa in 2012.

20. Pursuant to ORS 30.275, plaintiff timely filed a Tort Claim Notice advising Chemeketa of her intent to commence this action.

21. Pursuant to ORS 124.100 (6), a copy of this complaint will be served on the Oregon Attorney General within 30 days of the date of the date this complaint is filed.

22. Pursuant to ORS 124.100 (2)(b), plaintiff is entitled to an amount equal to three times her noneconomic damages.

23. Plaintiff is entitled to her reasonable attorney fees pursuant to ORS 124.100 (2)(c).

Page 5- COMPLAINT

**Richard E. Slezak** *PC*
6446 Fairway Ave SE Suite 120
Salem OR 97306
503 315-2022

## SEXUAL BATTERY

24. For her first claim for relief against Lanning, plaintiff realleges paragraphs 1 through 23 and incorporates them by this reference. She further alleges that:

25. Lanning acted intentionally.

26. Lanning subjected plaintiff to harmful or offensive sexual contact.

27. The sexual contact caused plaintiff mental and emotional distress.

28. As a result of Lanning's conduct, plaintiff sustained lost income and benefits of $30,000; medical and counseling expenses of $12,000; diminished future earning capacity of $220,000; and future medical and counseling expenses of $120,000, to her economic damages of $382,000, all of which continue and which will be finally determined at trial.

29. As a further result of Lanning's conduct, plaintiff experienced and still experiences mental and emotional suffering, much of which may be permanent in nature, including fright, anguish, night terrors, fear, shock, humiliation, embarrassment, and a general loss of enjoyment of life, to her noneconomic damages of $4,500,000.

30. Lanning's conduct was done with a wanton disregard for plaintiff's health and safety, constituting an extraordinary transgression of the bounds of socially tolerable conduct, and plaintiff is entitled to punitive damages.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

31. For her second claim for relief against Lanning, plaintiff realleges paragraphs 1 through 30, and incorporates them by this reference. She further alleges that:

32. Lanning intended to inflict severe emotional distress on plaintiff.

33. Lanning's acts were the cause of plaintiff's severe emotional distress.

## INVASION OF PRIVACY

34. For her third claim for relief against Lanning, plaintiff realleges paragraphs 1 through 30, and incorporates them by this reference. She further alleges that:

35. Lanning's conduct was an intentional physical and mental intrusion into a place where plaintiff had secluded herself.

36. Lanning knew of should have known that the intrusion was highly offensive to a reasonable person.

## INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

37. For her fourth claim for relief against Lanning, plaintiff realleges paragraphs 1 through 30 and incorporates them by this reference. She further alleges that:

38. Lanning was not a party to plaintiff's employment relationship with the college.

39. Lanning intended to interfere with plaintiff's relationship with the college, or knew that such interference was substantially certain to occur from his conduct.

40. Plaintiff resigned her employment with the college, June 30, 2014.

41. Lanning interfered through improper means or for an improper purpose with plaintiff's economic relationship with the college.

## CIVIL RIGHTS
(42 USC § 1983)

42. For her first claim for relief against Chemeketa, plaintiff realleges paragraphs 1 through 30, and incorporates them by this reference. She further alleges that:

43. Plaintiff had a liberty interest in being free from discrimination:

  a. on the basis of her sex;

Page 8- COMPLAINT

    b.    that results in sexual abuse;

    c.    that results in the deprivation of plaintiff's right to privacy;

    d.    that results in the deprivation of plaintiff's right to her good reputation; and

    e.    that results in the deprivation of her right to pursue her livelihood.

39.    At all times material, Lanning's conduct deprived plaintiff of her rights under the United States and Oregon Constitutions, as specifically described above.

40.    The college was a local government entity under 42 USC § 1983.

41.    Lanning was an official of the college, with final policymaking authority; thus his conduct constituted official government policy.

42.    Lanning's conduct was made in deliberate indifference to plaintiff's rights protected by the United States and Oregon Constitutions, and laws of the United States and Oregon.

43.    Lanning's conduct was made under color of state law, while acting in his official capacity with the college.

44.    Lanning was aware of a specific risk of harm to plaintiff that could have befallen her, and did, in fact, befall her, as a result of Lanning's conduct.

45.    Plaintiff is entitled to her attorney fees under 42 USC §1988(b).

46.     Plaintiff entitled to punitive damages under 42 USC §1983.

## TITLE IX
(20 USC §1681)

47.     For her second claim for relief against Chemeketa, plaintiff realleges paragraphs 1 through 30, and 43 through 46, and incorporates them by this reference. She further alleges that:

48.     Chemeketa receives federal financial assistance for education programs and activities under Title IX, which prohibits discrimination in employment, under any education program or activity of recipients without limitation.

49.     Chemeketa unlawfully discriminated against plaintiff on the basis of her sex.

## NEGLIGENCE
(Special Relationship)

50.     For her third claim for relief against Chemeketa, plaintiff realleges paragraphs 1 through 30 and incorporates them by this reference. She further alleges that:

51.     There was a special relationship between Chemeketa and plaintiff that created a duty of supervision to not unreasonably expose plaintiff to a foreseeable risk of harm;

Page 10- COMPLAINT

52. Chemeketa's conduct in failing to protect plaintiff from Lanning posed a foreseeable risk of harm to plaintiff to be free of sexual assault or abuse of the kind that befell her;

53. Chemeketa's conduct in light of this risk was unreasonable; and

54. Plaintiff was a member of the class of persons and her injury was within the general type of potential incidents and injuries that made Chemeketa's conduct negligent.

### NEGLIGENCE
(Foreseeability)

55. In the alternative to her fourth claim for relief, and for her fifth claim for relief against Chemeketa, plaintiff realleges paragraphs 1 through 30 and incorporates them by this reference. She further alleges that:

56. Chemeketa was negligent in the following:

a. failing to use reasonable care in investigating and granting Lanning privileges to work at Chemeketa;

b. in failing to properly supervise Lanning during the conference at the hotel; and

c. in concealing Lanning's prior instances of sexual harassment of his subordinate employees;

Page 11- COMPLAINT

## VICARIOUS LIABILITY

57. For her fourth claim against Chemeketa, plaintiff realleges paragraphs 1 through 30, and incorporates them by this reference. She further alleges that:

58. Lanning's position with Chemeketa provided him with the opportunity to sexually assault plaintiff. Lanning's acts were substantially within the time and space limits authorized by his employment; were motivated, at least in part, by a purpose to serve Chemeketa; and was of a kind that Lanning was hired to perform.

59. Lanning's rank was sufficiently high so as to make him Chemeketa's proxy, and Lanning's negligence is imputed to Chemeketa.

## DEMAND FOR JURY TRIAL

60. Plaintiff demands a jury trial.

Wherefore, plaintiff prays for judgment against defendants, and each of them, as follows:

a. Against both defendants, for her economic damages of $382,000; her noneconomic damages of $4,500,000; and her costs and disbursements;

b. Against both defendants for her reasonable attorney fees;

c. Against both defendants for triple the noneconomic damages; and

Page 12- COMPLAINT

**Richard E. Slezak** *PC*
**6446 Fairway Ave SE Suite 120**
**Salem OR 97306**
**503 315-2022**

    d.    Against Lanning for plaintiff's punitive damages.

DATED:    this ___24th___ day of September, 2014

        /s/ Richard E. Slezak
        Richard E. Slezak OSB #862906
        res@slezaklaw.com
        Attorney for Plaintiff

        20674 complaint doe/ech